
Signed and Filed: April 29, 2019

_____
**DENNIS MONTALI
U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>YELLOW CAB COOPERATIVE, INC.,<br><br>                  Debtor. | Bankruptcy Case<br>No. 16-30063-DM<br><br>Chapter 11 |
| RANDY SUGARMAN, Chapter 11 Trustee for Yellow Cab Cooperative, Inc.,<br><br>                  Plaintiff,<br><br>vs.<br><br>DOUGLAS A. TAYLOR,<br><br>                  Defendant. | Adv. Proc. No. 18-03075 |

**MEMORANDUM DECISION REGARDING DEFENDANT'S MOTION TO DISMISS ADVERSARY PROCEEDING**

On March 8, 2019, this court held a hearing on the motion of defendant Douglas A. Taylor ("Taylor"), the former accountant for debtor Yellow Cab Cooperative, Inc. ("Debtor" or "YCC"), for dismissal of this action filed by Randy Sugarman, the chapter 11 trustee of YCC ("Trustee"). The court took the matter under submission. For the reasons set forth below, the court finds that the doctrine of *in pari delicto* (also known as "unclean hands")

bars the Trustee's action. Accordingly, the court will dismiss the adversary proceeding, with leave to amend.

I. The Complaint

On October 31, 2018, Trustee filed an action in state court against Taylor asserting three causes of action: (1) Professional Negligence, (2) Accounting Malpractice, and (3) Conspiracy.[1] On December 5, 2018, Taylor removed the action to this court [Dkt. 1]. On December 12, 2018, Taylor moved for dismissal of the action [Dkt. 4]. Thereafter, Trustee filed his opposition [Dkt. 10] and Taylor filed his reply [Dkt. 11].

Trustee alleges in paragraphs 17-22 of the complaint that YCC made improper patronage distributions from 2012-2015, and that Taylor calculated the amounts to be distributed. Moreover, the complaint alleges that Taylor willfully or negligently categorized multiple personal injury lawsuits as "reasonably possible" liabilities (Dkt. 1, ¶¶ 27 - 33), even though the claims were likely future liabilities (and at least one had been tried by a jury that ruled in favor of the plaintiff), and that he did not comply with Generally Accepted Accounting Principles. According to Trustee, these errors (whether negligent or intentional) facilitated the improper transfer of funds to owner-drivers and the depletion of the company's assets.

In addition to alleging negligence and malpractice, Trustee asserted that Taylor had conspired with Debtor and its officers and directors to divest Debtor of "valuable and necessary assets to allow improper distributions to YCC members and to hide money from creditors and judgment creditors." Dkt. 1 at ¶ 16. Paragraph 16

---

[1] The preface to the complaint states that the action is for professional negligence, deepening the insolvency of YCC, and accounting and auditing malpractice.

summarizes Trustee's lawsuit and describes the purported misconduct giving rise to it:

> 16. From at least 2007 until the Trustee was appointed, YCC was under the control of its officers and directors who were also YCC members and medallion holders. There were no outside directors of YCC. On information and belief, Taylor <u>conspired with YCC's officers and directors to divest YCC of valuable and necessary assets to allow improper distributions to YCC members and to hide money from creditors and judgment creditors</u>. Specifically, <u>Taylor worked with YCC management to help funnel YCC assets to the unrelated entity, TPC, and its subsidiaries, calculated and assisted YCC in making economically irresponsible patronage distributions to YCC members, and negligently failed to properly account for judgments and liabilities of YCC so it could properly preserve assets and reserve sufficient capital to account for reasonably probable liabilities of YCC. Taylor participated in and assisted YCC's management to funnel money away from YCC to line the members' pockets at the expense of the financial health of YCC.</u> This resulted in YCC being undercapitalized, underinsured, without sufficient reserves, and without the assets to meet its obligations and liabilities, which ultimately resulted in YCC's demise through bankruptcy and the non-payment of claims and judgments against YCC.

*Id.* at ¶ 16 (emphasis added).

The complaint describes the two types of distributions made to members (Profit Distributions and Patronage Distributions) and alleges that YCC paid Patronage Distributions "without regard to their reasonableness or the financial health of YCC." *Id.* at ¶¶ 17-19. Trustee further alleges that Taylor provided YCC with an annual calculation of the Patronage Distributions and "was fully aware YCC made unlawful Patronage Distributions to non-voting members not entitled to them, while technically insolvent." *Id.* at ¶¶ 21-22.

Paragraphs 27-33 of the complaint focus on the inadequacies, errors, and misstatements in Taylor's audit reports. While the

-3-

bulk of those allegations pertain to the facts giving rise to the professional negligence claim (the first cause of action), paragraph 33 is broader and appears to develop a deepening insolvency theory: "Taylor conspired with YCC's officers and directors to avoid financial prudence with YCC, which would have shown YCC to be insolvent, so that the members could continue to take money out of YCC to YCC's and its creditors' detriment." *Id.*

According to Trustee, Taylor's professional negligence, accounting and auditing malpractice, and conspiracy with YCC's officers and directors resulted in YCC's ultimate demise and non-payment of claims and judgments against YCC." *Id.; see also* ¶¶ 22, 33, and 45-46 of the Complaint.[2]

## II. Taylor's Grounds for Dismissal

Taylor asserted three grounds for dismissal of the Trustee's claims: (1) the doctrine of *in pari delicto* (or unclean hands) bars them; (2) any damages arising from the alleged conduct were not caused by him, but by YCC's officers and directors, who have already settled with the trustee; and (3) conspiracy is not an independent tort under California law. As discussed in more detail below, the court agrees with Taylor's first contention that the doctrine of unclean hands bars Trustee's claims.

*A. The Unclean Hands Defense*

**1. The Defense Generally**

Section 3517 of the California Civil Code generally codifies

---

[2] Interestingly, many of the allegations made by Trustee against Taylor are almost identical to the claims he made against YCC's officers and directors in *Sugarman v. Mellegard, et al.,* Case No. CBC-18-563681 in the Superior Court of the State of California, City of San Francisco. (The complaint in the Mellegard action is attached as Exhibit A to the underlying motion to dismiss at Dkt. 4-2. *See* Part II(A) of the Reply Brief (Dkt. 11 at pages 4-7).

-4-

the doctrine of *in pari delicto* or unclean hands: "No one can take advantage of his own wrong." Case law is much more specific. As noted in *In re Mortgage Fund '08 LLC*, 527 B.R. 351, 366 (N.D. Cal. 2015), "[t]he doctrine of *in pari delicto* dictates that when a participant in illegal, fraudulent, or inequitable conduct seeks to recover from another participant in that conduct, the parties are deemed *in pari delicto,* and the law will aid neither, but rather, will leave them where it finds them." *Id., citing Case v. U.S. Bank. Nat. Assn.,* 127 Cal. App. 4th 1138, 1143 n. 1 (2005).

Both federal and state courts in California have applied the *in pari delicto* defense to dismiss actions filed by bankruptcy trustees against third parties who may have participated with a debtor or a debtor's management in the concealment or dissipation of the debtor's assets prior to the petition date. *See, e.g. Mortg. Fund '08*, 527 B.R. at 366; *Uecker v. Zentil,* 244 Cal. App. 4th 789, 798 (2016) (determining that claims asserted by a bankruptcy trustee against a former attorney for debtor limited liability company were barred in part by the *in pari delicto* doctrine); *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 679 (2005) (*in pari delicto* doctrine barred bankruptcy trustee of a debtor investment company from joining investors in an action for fraud against an attorney for aiding the debtor in its purported fraud on investors).

**2. Governing Law from this District**

While application of the unclean hands defense generally involves an examination of the relationship between parties to a lawsuit and their relative culpability for the alleged misconduct, the determination of the validity of such a defense in a bankruptcy

Case: 18-03075   Doc# 13   Filed: 04/29/19   Entered: 04/29/19 17:42:28   Page 5 of 10

context is more difficult, where the plaintiff is generally a trustee and a non-participant in the actions leading to the lawsuit. That said, judges for the U.S. District Court for the Northern District of California (the "District Court") have held that bankruptcy trustees are subject to an unclean hands defense arising from a debtor's pre-petition conduct vis-a-vis a defendant.

In *Mortg. Fund '08*, the District Court held that trustees are subject to *in pari delicto* defenses that could have been asserted against a debtor plaintiff. 527 B.R. at 367-68. There, the trustee sued a line of credit lender, alleging claims for fraudulent transfer and for aiding and abetting a breach of fiduciary duty by the debtor. The lender asserted an *in pari delicto* defense, and the trustee argued that the defense was inapplicable, as she [the trustee] was not a wrongdoer and was not involved in the acts giving rise to the defense. *Id.* The District Court disagreed, holding that even though the trustee was not a wrongdoer, the actions of the debtor's sole owner, member and manager were imputed to the debtor and thus the trustee:

> The Ninth Circuit has not addressed, in a published opinion, the applicability of the *in pari delicto* doctrine to claims brought by a liquidating trustee. However, in an unpublished decision, the Ninth Circuit affirmed a decision by Judge Chesney of this Court in which she held that the *in pari delicto* defense could be asserted against a bankruptcy trustee because "[w]here, as here, a bankruptcy trustee files claims on behalf of the bankruptcy estate, § 541(a)(1) ... provides that the trustee's rights are no greater than the rights of the debtor."

*Id., citing In re Crown Vantage, Inc.*, No. 023836 MMC, 2003 WL 25257821, at *6 (N.D. Cal. Sept. 25, 2003), *aff'd*, 198 Fed. Appx. 597 (9th Cir. 2006) (affirming the "well-reasoned" orders).

-6-

In *Mortgage Fund*, the District Court also cited the legislative history to section 541 in support of its conclusion that bankruptcy trustees are subject to the *in pari delicto* defense:

> Though this paragraph [§ 541(a)(1)] will include choses in action and claims by the debtor against others, <u>it is not intended to expand the debtor's rights against others more than they exist at the commencement of the case</u>. For example, if the debtor has a claim that is barred at the time of the commencement of the case by the statute of limitations, then the trustee would not be able to pursue that claim, because he too would be barred.

*Mortg. Fund '08*, 527 B.R. at 367, *quoting* H.R. Rep. 95-595, at 367-68, reprinted in 1978 U.S.C.C.A.N. 5963, 6323 (emphasis added). Relying on case law, legislative history and statutory interpretation, the District Court held that the trustee's claims were barred under the doctrine of *in pari delicto.*

In *Crown Vantage,* 2003 WL 25257821, a liquidating trustee asserted claims against numerous defendants arising out of the alleged fraudulent looting of a corporation. The District Court held that the defendants could assert the *in pari delicto* defense against claims brought by the trustee, even though the trustee was not the actual person/entity that had acted in a manner to give rise to that defense:

> As explained in [*Sender v. Buchanan (In re Hedged-Investments Associates, Inc.*), 84 F.3d 1281, 1284-86 (10th Cir. 1996)], when a trustee asserts a claim on behalf of a debtor, the trustee proceeds under 11 U.S.C. § 541(a)(1), which defines the property of the estate as "all legal or equitable interests of the *debtor in property as of the commencement of the case." See Sender*, 84 F.3d at 1285 (citing 11 U.S.C. § 541(a)(1)). *Sender* concluded that § 541(a)(1) "establishes the estate's rights as no stronger than they were when actually held by the debtor," and thus *in pari delicto*, or any other defense available as against the debtor, can be asserted against the trustee. *See id.*

-7-

*Id.* at *6-7.

Both trustees in *Crown Vantage* and *Mortgage Fund '08* argued that the Ninth Circuit's decision in *Federal Deposit Ins. Corp. v. O'Melveny & Myers*, 61 F.3d 17 (9th Cir. 1995), precluded the application of the *in pari delicto* defense. The District Court disagreed. In *O'Melveny*, the Ninth Circuit, applying California law, held that "defenses based on a party's unclean hands or inequitable conduct do not generally apply against that party's <u>receiver</u>." *See id.* at 19 (emphasis added). *O'Melveny* is therefore distinguishable, as it involved a receiver, a party not subject to the restrictions of section 541(a)(1). In contrast, Trustee's powers *are* limited by section 541(a)(1), which provides that a trustee's rights are no greater than the rights of a debtor.[3]

### 3. Trustee's Defenses to the Unclean Hands Doctrine

Trustee asserts that an "adverse interest exception" precludes application of the *in pari delicto* defense by Defendant. The "adverse interest exception" provides that where corporate agents act in a manner adverse to the interests of the corporation, the actions of the agents are not imputed to the

---

[3] Even in actions predating section 541, the Ninth Circuit stated, "It is elemental that the trustee stands in the shoes of the bankrupt ... and can assert no greater rights against the [defendant] than could have been asserted by the bankrupt in the absence of bankruptcy proceedings." *See Schultz v. England*, 106 F.2d 764, 768 (9th Cir. 1939) (holding resolution of trustee's claim to equipment in building leased by landlord to debtor was dependent on whether debtor had right to possess equipment as against landlord); *see also Pellerin v. Stuhley (In re Destro)*, 675 F.2d 1037, 1040 (9th Cir. 1982) (holding that bankruptcy trustee "succeeds only to such rights as the bankrupt possessed; and the trustee is subject to all claims and defenses which might have been asserted against the bankrupt but for the filing of the petition"). *Crown Vantage*, 2003 WL 25257821, at *6-7.

-8-

corporation. Trustee contends that if the actions of the board members and officers cannot be imputed to Debtor, they likewise cannot be imputed to Trustee.

The "adverse interest exception," however, is subject to its own exception, the "sole actor" exception. *In re Mortgage Fund '08 LLC*, 527 B.R. at 351, *citing Crown Vantage, Inc.*, 2003 WL 25257821, at *7. The "sole actor" exception provides that a defrauded entity cannot escape the imputation of knowledge under the *in pari delicto* doctrine when the defrauded entity and the alleged bad actors are one and the same. *Id.*

Here, Trustee alleges that "YCC was under the control of its officers and directors who were also YCC members and medallion holders." *Complaint*, Dkt. 1 at ¶ 16. "On information and belief, Taylor conspired with YCC's officers and directors to divest YCC of valuable and necessary assets to allow improper distributions to YCC members and to hide money from creditors and judgment creditors." *Id.* "Taylor participated in and assisted YCC's management to funnel money away from YCC to line the members' pockets at the expense of the financial health of YCC." *Id.* Given these allegations, particularly the allegation that the "bad actors" (the board and members) controlled the Debtor, the purportedly defrauded entity (Debtor) and the same and thus subject to the "sole actor" exception to the "adverse interest exception" to the doctrine of *in pari delicto.* In other words and as a consequence, Trustee cannot prevail on the "adverse interest exception" in the doctrine of *in pari delicto*. The *in pari delicto* defense

-9-

therefore bars the claims of Trustee against Taylor.

*B. Taylor's Other Defenses*

As noted previously, Taylor asserts that any damages arising from the alleged conduct were not caused by him, but by YCC's officers and directors, who have already settled with the Trustee. Causation is a factual issue, and but for the claims being barred under the *in pari delicto* doctrine, Trustee has alleged sufficient facts to survive a motion to dismiss based on lack of causation. That said, Trustee may have an independent claim for malpractice against Taylor not arising from and independent of the alleged fraud of the debtor and its members. The court will therefore dismiss all claims in the Complaint, with leave to amend the accounting malpractice claim.

III. Conclusion

For the reasons set forth above, the court will grant Taylor's motion to dismiss with leave to amend the accounting malpractice claim. Trustee shall file the amended complaint no later than May 31, 2019; if the amended complaint is timely filed, the adversary proceeding status conference will be held on June 28, 2019, at 1:30 p.m.

Counsel for Taylor shall upload an order granting the motion with leave to amend "for the reasons set forth in the Memorandum Decision entered on [date]." Counsel for Taylor shall also comply with B.L.R. 9021-1(c) and file (on the docket, separate from the order) a certificate of service reflecting such compliance.

**\*\*END OF MEMORANDUM DECISION\*\***

-10-